UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

CARMELO A. RIVERA-CORREA,

   Claimant,

   v.

MICHAEL S. ASTRUE,

   Respondent.

Civil No. 08-2294 (JAF)

**OPINION AND ORDER**

Claimant, Carmelo A. Rivera-Correa, petitions this court under 42 U.S.C. § 405(g) to review the decision of Respondent, Commissioner of Social Security Michael S. Astrue ("Commissioner"), denying Claimant's application for disability benefits. (Docket No. 1.) Claimant filed a memorandum in support of his petition (Docket No. 8), and Commissioner filed a memorandum in opposition (Docket No. 9).

I.

**Factual and Procedural History**

We derive the following facts from the parties' filings (Docket Nos. 1; 6; 8; 9) and the record in this case ("R.") (Docket No. 5). Claimant was born on November 27, 1960. (R. at 22.) He completed the twelfth grade and began college. (R. at 245.) He worked from 1986 to 1991 as group leader at Abbott Pharmaceutical and from 1991 to June 2004 as pharmaceutical compounding supervisor at Isomedic. (R. at 139, 252.) On June 28, 2004, Claimant stopped

Civil No. 08-2294 (JAF)                                                                                          -2-

working due to "severe depressive symptoms." (R. at 218.) Claimant applied for Social Security benefits on October 5, 2005. (R. at 186.)

On July 5, 2006, Commissioner determined that Claimant was not disabled and, accordingly, was not entitled to disability benefits under the Social Security Act. (R. at 35-40.) On September 2, 2006, Claimant requested reconsideration of the determination. (R. at 31.) Commissioner obliged and, on January 24, 2006, affirmed the earlier denial. (R. at 43-47.)

On February 24, 2006, Claimant requested an administrative hearing before an administrative law judge ("ALJ") (R. at 48), which took place before ALJ Soloman Goldman on October 31, 2007 (R. at 50-53, 241). Claimant attended the hearing with counsel and testified regarding his alleged disability. (R. at 243-51.) A vocational expert, Dr. Margarita Valladares-Díaz, also testified at Claimant's hearing. (R. at 251-54.) She opined that Claimant is unable to perform his past work (R. at 252), and she discussed lighter jobs available in substantial numbers in various industries (R. at 252-53). When asked by Claimant's counsel about a relatively severe condition of depression, Dr. Valladares opined that a person suffering from such would be "unable to perform any job in our national economy." (R. at 253-54.)

Also before the ALJ was the record showing Claimant's history of chronic depression. Claimant first sought psychiatric treatment for anxiety in June of 2004; he saw Dr. Armando Fortuño-Padilla twice in June and Dr. Raúl Benítez-Pérez once the following month. (See R. at 218-32.) At that time, both doctors recommended rest from work for at least a month due to severe depression. (Id.)

The evidence shows that Claimant next sought psychiatric care in May 2005, from Dr. José A. Juarbe, who continued to see Claimant at least through July 2007. (R. at 153-61, 210-17.) The record contains two reports by Dr. Juarbe, along with his progress notes from visits with Claimant. (Id.) Said notes document Claimant's attitude toward his workplace, suggesting that Claimant was, in fact, working during that time.[1] (See R. at 155-61.) As a general matter, Dr. Juarbe reported that Claimant suffers from a "markedly severe" mental impairment and has "marked" impairment in all four functional capacities, discussed below. (R. at 153-54, 212.)

Also on record were medical findings and reports from the initial and reconsideration investigations by Commissioner. Specifically, in 2006, psychiatrist Dr. J.A. Mojica-Sandoz examined Claimant, and psychiatrist Dr. Luis Sánchez reviewed Claimant's medical records. (R. at 194-208, 231-33.) Dr. Mojica diagnosed mild to moderate dysthymic disorder (R. at 233), and Dr. Sánchez rated Claimant's degree of limitation in relevant functional capacities as mild (R. at 204). In 2007, psychiatrist Dr. Hazel A. Toledo-Espiet examined Claimant, and psychiatrist Dr. Jeanette Maldonado reviewed Claimant's medical records. (R. at 170-84, 187-89.) Dr. Toledo diagnosed Claimant with a major depression disorder (R. at 189), and Dr. Maldonado rated Claimant's degree of limitation in relevant functional capacities as mild to moderate (R. at 180).

---

[1] The ALJ, however, affirmatively found that Claimant had "not engaged in substantial gainful activity since June 28, 2004." (R. at 16.)

The ALJ issued his decision denying Claimant disability benefits on December 26, 2007. (R. at 11-24.) He found, inter alia, that Claimant has a severe impairment in that he suffers from a major depressive disorder; that Claimant does not have an impairment that meets or medically equals a listed impairment, discussed below; that Claimant has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but has some nonexertional limitation; and, finally, that Claimant is not disabled, as defined by the Social Security Act. (R. at 16-24.) In his written opinion, the ALJ surveyed Claimant's relevant medical history (R. at 16-18); found that Claimant's mental impairment does not cause "marked" limitations in at least two categories of functional capacities, discussed below (R. at 18-19); and assessed and applied Claimant's RFC (R. at 19-23).

On January 2, 2008, Claimant sought review of the ALJ's decision from the Appeals Council (R. at 9-10), which denied review on September 12, 2008 (R. at 3-5). On November 12, 2008, Claimant filed the present petition in this court seeking review of the ALJ's decision. (Docket No. 1.) Claimant filed a memorandum of law on March 24, 2009 (Docket No. 8), and Commissioner filed a memorandum of law on April 21, 2009 (Docket No. 9).

## II.

### Standard of Review

An individual is disabled under the Social Security Act ("the Act") if he is unable to do his prior work or, "considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d).

Civil No. 08-2294 (JAF)                                                                                                        -5-

The Act provides that "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive." § 405(g). Substantial evidence exists "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [the] conclusion." Irlanda-Ortíz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (internal quotation marks omitted) (quoting Rodríguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)).

We must uphold Commissioner's decision if we determine that substantial evidence supports the ALJ's findings, even if we would have reached a different conclusion had we reviewed the evidence de novo. Lizotte v. Sec'y of Health & Human Servs., 654 F.2d 127, 128 (1st Cir. 1981). In reviewing a denial of benefits, the ALJ must consider all evidence in the record. 20 C.F.R. § 404.1520(a)(3) (2009). Credibility and "[c]onflicts in the evidence are . . . for the [ALJ] - rather than the courts - to resolve." Evangelista v. Sec'y of Health & Human Servs., 826 F.2d 136, 141 (1st Cir. 1987). We reverse the ALJ only if we find that he derived his decision "by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999).

## III.

### Analysis

Claimant argues that the ALJ erred in comparing Claimant's impairment to a listed mental disorder and in assessing Claimant's RFC. (Docket No. 8 at 9-15.) Claimant alleges that the ALJ gave undue weight to non-examining physicians' opinions; improperly disregarded

Civil No. 08-2294 (JAF)                                                                                          -6-

Claimant's treating physician's conclusions; made findings that contradicted both the evidence and his other findings; and ignored relevant medical evidence. (Id.)

Section 404.1520a describes a particular technique the ALJ must apply to assess a claimed mental impairment. See 20 C.F.R. § 404.1520a(a) (describing need for special technique). The ALJ first must determine whether the claimant has a medically determinable impairment and, if so, must both "specify the symptoms, signs, and laboratory findings that substantiate the presence of the impairment" and "rate the degree of functional limitation resulting from the impairment." § 404.1520a(b). The ALJ must so rate as to four broad functional areas: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. § 404.1520a(c)(3). The ratings for the first three areas are based on a five-point scale (none, mild, moderate, marked, and extreme); the rating for the fourth area is based on a four-point scale (none, one or two, three, four or more). § 404.1520a(c)(4). If the ALJ rates the limitation in the first three functional areas as "none" or "mild" and in the fourth area as "none," the ALJ will generally conclude that the impairment is not severe. § 404.1520a(d)(1). Otherwise, the ALJ must continue the assessment by determining whether the impairment meets or is equivalent in severity to a listed mental disorder and, if so, assessing the claimant's RFC. § 404.1520a(d)(2), (3). The ALJ's "written decision must incorporate the pertinent findings and conclusions based on the technique." § 404.1520a(e)(2).

Civil No. 08-2294 (JAF)                                                                                              -7-

The ALJ found that Claimant has a severe impairment, a major depressive disorder, and made a specific finding as to the degree of limitation in each of the functional areas. (R. at 16-19.) Next, and most relevant to this review, the ALJ determined that (1) Claimant's impairment, while severe, neither meets nor is equivalent in severity to a listed mental disorder (R. at 18-19); and (2) Claimant had sufficient RFC to sustain gainful employment, albeit not the same work he had performed before (R. at 19-23).[2] On review, we must determine whether substantial evidence supports the ALJ's findings. See Irlanda-Ortíz, 955 F.2d at 769.

To determine that Claimant's impairment neither meets nor is equivalent in severity to a listed mental disorder, the ALJ had to find that Claimant's impairment did not match the criteria in either (1) paragraphs A and B of a particular section in the Code of Federal Regulations ("Code"), 20 C.F.R. pt. 404, subpt. P, app. 1, pt. A, 12.04; or (2) paragraph C of same, id. See 20 C.F.R. §§ 404.1520a(d)(2), 404.1525. He found that Claimant's condition did not match the description in either paragraphs B or C. (R. at 18-19.)

For Claimant's impairment to match the criteria in paragraph B, the ALJ had to determine that Claimant has a sufficiently-extreme limitation in at least two of the four areas of functional capacities. See 20 C.F.R. pt. 404, subpt. P, app. 1, pt. A, 12.04B. Instead, the ALJ found "mild" restriction in activities of daily living; "moderate" restriction in both social

---

[2] These two findings are those explicitly disputed by Claimant in his memorandum. (See Docket No. 8 at 9-15.)

Civil No. 08-2294 (JAF)                                                                                    -8-

functioning and concentration, persistence, or pace; and no episodes of decompensation. (R. at 19.) We find substantial evidence on the record supporting this evaluation.[3]

For Claimant's impairment to match the criteria in paragraph C, the ALJ had to determine that Claimant experienced (1) repeated episodes of decompensation, each of extended duration; (2) a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or (3) a current history of one or more years' inability to function outside a highly-supportive living arrangement, with an indication of continued need for such an arrangement. See 20 C.F.R. pt. 404, subpt. P, app. 1, pt. A, 12.04C. Upon review of the record, we find that substantial evidence supports the ALJ's determination that none of these conditions exist in Claimant's case (R. at 19).

To conclude, finally, that Claimant is not disabled, the ALJ first had to assess Claimant's RFC and then use that assessment to determine whether Claimant could perform his past relevant work or, if not, nevertheless adjust to other work. See 20 C.F.R. §§ 404.1520(e), 404.1520a(d)(3), 404.1545, 404.1560-.1569a. Section 404.1545 guides the ALJ's assessment of RFC, which is defined as "the most [one] can do despite [one's] limitations."

---

[3] Evidence to consider when rating a claimant's limitations in these four categories is described in a section of the Code, 20 C.F.R. pt. 404, subpt. P, app. 1, pt. A, 12.00C. We find that the record, on the whole, contains sufficient evidence to support the ALJ's rating for each. (See, e.g., R. at 187, 212, 232 (activities of daily living); R. at 153, 156, 157, 159, 161, 187, 188, 212, 217, 232 (social functioning); R. at 153, 156, 157, 173, 187, 189, 212, 232 (concentration, persistence, or pace); R. at 187, 231 (episodes of decompensation).)

§ 404.1545(a)(1). The ALJ must use "all of the relevant medical and other evidence" to assess RFC. § 404.1545(a)(3); see also § 404.1545(c) (describing evidence relevant to mental limitations). Section 404.1529 guides the ALJ's evaluation of symptoms and their effect on a claimant's capacity for work. See, e.g., § 404.1529(c), (d)(4).

Referencing relevant regulations, the ALJ found that Claimant has only nonexertional limitations, in that he cannot perform complex tasks, perform under intense stress or pressure, or deal with the public. (See R. at 19-22.) In so deciding, the ALJ considered Claimant's symptoms, noting that "consultative evaluations have shown that the prescribed treatment and the medication were effective in the control of [those] symptoms." (R. at 21.) He found persuasive, "in view of the record as a whole," the assessments by state consultants who opined that Claimant is able to work. (Id.) He noted Dr. Juarbe's opinion to the contrary, but found said opinion insufficiently supported by the record evidence. (R. at 22.) Upon review of the record, we find that substantial evidence supports the ALJ's assessment. (See, e.g., R. at 167, 208.)

Next, the ALJ must determine whether the claimant, given his particular RFC, can perform past relevant work. See §§ 404.1520(f), 404.1560(b). A vocational expert may be used to aid this determination. § 404.1560(b)(2). The ALJ found Claimant unable to perform his past relevant work, given Claimant's nonexertional limitations. (R. at 22.) Claimant does not dispute this finding (Docket No. 8), and we find it supported by substantial evidence (see, e.g., R. at 251-54).

Finally, if the ALJ finds that the claimant's RFC precludes his return to past relevant work, the ALJ must then determine whether said RFC nevertheless permits other work that exists in substantial numbers in the national economy. See §§ 404.1520(g), 404.1545(a)(5)(ii); see also §§ 404.1560-.1569a (guidelines for assessing vocationally relevant factors such as age, education, work experience, and work availability); 20 C.F.R. pt. 404, subpt. P, app. 2 ("Medical Vocational Guidelines"); id. § 204.00 (framework for decisions involving solely nonexertional limitations). With reference to both the framework provided by the Medical Vocational Guidelines and the vocational expert's testimony, the ALJ determined that Claimant is "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (R. at 22-23.) Upon review of the record, we find that substantial evidence supports this determination (see, e.g., R. at 251-54) and, thus, uphold the ALJ's attendant conclusion that Claimant is not disabled.

### III.

### Conclusion

In view of the foregoing, we hereby **AFFIRM** Commissioner's determination. We **DENY** Claimant's petition (Docket No. 1) and **DISMISS WITH PREJUDICE** all claims therein.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, this 8th day of January, 2010.

                                                  s/José Antonio Fusté
                                                  JOSE ANTONIO FUSTE
                                                  Chief U.S. District Judge